**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| PAUL D. JONSON, | DOCKET NUMBER |
| Appellant, | PH-0752-13-0236-B-1 |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | DATE: September 20, 2016 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Elizabeth S. Dillon, Esquire, Boston, Massachusetts, for the appellant.

Eric S. Gold, Esquire, Arlington, Virginia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the remand initial decision, which affirmed his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the remand initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2 The Federal Deposit Insurance Corporation (FDIC) removed the appellant from his position as Case Manager effective February 1, 2013. Initial Appeal File (IAF), Tab 4 at 80. The charged misconduct was failure to meet the minimum standards for employment with the FDIC. *Id.* at 124. Specifically, the FDIC alleged that the appellant violated its regulations concerning the minimum standards of fitness for employment (the minimum fitness regulations) by failing to satisfy eight separate debts to FDIC-insured institutions totaling more than $50,000. *Id.* at 123-26; *see generally* 12 C.F.R. part 336, subpart B (containing these regulations). Under the minimum fitness regulations, this conduct is defined as "a pattern or practice of defalcation." 12 C.F.R. § 336.3(i)(1).

¶3 In two prior Opinions and Orders, we considered a number of issues regarding the minimum fitness regulations and the appellant's removal. *Jonson v. Federal Deposit Insurance Corporation*, 121 M.S.P.R. 56 (2014) (*Jonson I*), *reversed in part by* 122 M.S.P.R. 454 (2015) (*Jonson II*). Originally, in *Jonson I*, we reversed the appellant's removal on interlocutory review based on the FDIC's failure to obtain concurrence from the Office of Government Ethics (OGE) for its

minimum fitness regulations. *Jonson I*, ¶¶ 5, 10-15, 17. We returned the appeal for a decision on the appellant's affirmative defenses. *Id.*, ¶¶ 18-19. After the appellant withdrew those defenses, the administrative judge issued an initial decision reversing the appellant's removal. IAF, Tab 32, Tab 34, Initial Decision at 1, 5.

¶4 The FDIC filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. With its petition for review, it submitted a declaration from OGE stating that the FDIC was not required to obtain concurrence from OGE prior to promulgating the minimum fitness regulations. *Jonson II*, ¶¶ 11, 13; PFR File, Tab 1 at 7, 28. Based on that declaration, and as a matter of comity and cooperation with OGE, in *Jonson II*, we reversed our prior finding that the FDIC was required to obtain OGE approval. *Jonson II*, ¶¶ 13-14. We remanded the appeal to the Board's regional office to determine if the FDIC met its burden to prove the charge. *Id.*, ¶ 20 n.11. We advised the regional office to permit the appellant to reinstate his affirmative defenses, which appeared to have been withdrawn in reliance on the Board's decision in *Jonson I*. *Id.*, ¶ 24 n.14. However, we observed that removal is the mandatory penalty for the charged misconduct under both the applicable statute and the minimum fitness regulations. *Id.*, ¶¶ 21‑23; 12 U.S.C. § 1822(f)(4)(B)(ii), (E)(iii); 12 C.F.R. § 336.8(a).

¶5 On remand, the FDIC filed a motion to compel due to the appellant's failure to respond to its discovery requests. Remand File (RF), Tab 4. After almost a month had passed with no response from the appellant to the FDIC's motion, the administrative judge ordered him to respond to the FDIC's discovery request. RF, Tab 5. The FDIC moved for sanctions after the appellant did not respond by the ordered deadline. RF, Tab 6. The administrative judge issued an order to the appellant to show cause why sanctions should not be granted. RF, Tab 7. The appellant did not respond, and the administrative judge granted sanctions. RF, Tab 8.

¶6     After obtaining new counsel, the appellant requested reconsideration of the sanctions. RF, Tab 9, Tab 11 at 4-5. He argued that his failure to respond to the FDIC's discovery, the motion to compel, and the order to show cause was solely the fault of his former counsel. RF, Tab 11 at 5, 8-12, 16-19. The FDIC responded to his motion. RF, Tab 12. After considering the parties' submissions, the administrative judge modified her prior order, still imposing sanctions on the appellant. RF, Tab 13 at 2-4. As part of her sanctions, she drew inferences in favor of the FDIC regarding the information sought and prohibited the appellant from introducing evidence regarding this requested information. *Id.* at 2. As another sanction, she decided the case on the written record without affording the appellant a hearing. *Id.* at 4.

¶7     In her remand initial decision, the administrative judge affirmed the appellant's removal. RF, Tab 17, Remand Initial Decision (RID) at 13. Specifically, she found that the FDIC proved its charge. RID at 8. She further found that the appellant failed to prove his disability discrimination affirmative defense, and that his remaining affirmative defenses were effectively precluded by the ordered sanctions. RID at 8-11. She determined that the FDIC proved that removal promoted the efficiency of the service and, because termination is the required penalty for violating the FDIC's minimum fitness regulations, she sustained the removal penalty. RID at 11-13.

¶8     The appellant has filed a petition for review, in which he contests the administrative judge's finding that his removal promotes the efficiency of the service. Remand Petition for Review (RPFR) File, Tab 1 at 13-16. He also asserts that the administrative judge abused her discretion by imposing sanctions and seeks to raise his affirmative defenses again. *Id.* at 9-13, 16-21; RF, Tab 15 at 7‑11, 17.

¶9     The FDIC has responded to the petition for review, and the appellant has replied. RPFR File, Tabs 3-4.

<u>The administrative judge properly found that the appellant's removal promotes the efficiency of the service.</u>

¶10    When taking an adverse action against an employee, an agency must prove by preponderant evidence that the charged conduct occurred, there is a nexus between the conduct and the efficiency of the service, and the particular penalty imposed is reasonable.[2]  *Dixon v Department of Commerce*, 109 M.S.P.R. 314, ¶ 8 (2008); *see* 5 U.S.C. § 7513(a) (permitting adverse actions "only for such cause as will promote the efficiency of the service").  Nexus generally may be shown in one of three ways:  (1) a rebuttable presumption of nexus that may arise in certain egregious circumstances based on the nature and gravity of the conduct; (2) a showing by preponderant evidence that the conduct affects the employee's or his coworkers' job performance, or management's trust and confidence in the employee's job performance; or (3) a showing by preponderant evidence that the conduct interfered with or adversely affected the agency's mission.  *Johnson v. Department of Health & Human Services*, 86 M.S.P.R. 501, ¶ 18 (2000), *aff'd per curiam*, 18 F. App'x 837 (Fed. Cir. 2001), *and aff'd sub. nom. Delong v. Department of Health & Human Services*, 264 F.3d 1334 (Fed. Cir. 2001).

¶11    The appellant disputes the administrative judge's nexus finding, arguing that his conduct was not egregious, his "performance was unaffected by his Bankruptcy action," and his personal debts had no impact on the FDIC's mission.  RPFR File, Tab 1 at 14-16.

¶12    Here, the removal was based on the FDIC's minimum fitness regulations, which in turn were enacted pursuant to section 1822(f)(4) of title 12.  *Jonson II*, ¶ 16.  Section 1822(f)(4) required the FDIC to prescribe minimum fitness regulations, which "prohibit any person who has . . . demonstrated a pattern or practice of defalcation regarding obligations to incurred depository

---

[2] The appellant does not challenge the administrative judge's findings that he engaged in the conduct alleged in the charges and that the penalty was appropriate.  RPFR File, Tab 1; RF, Tab 14 at 14; IAF, Tab 4 at 81‑85, 123‑27.  Therefore, we decline to disturb these findings.

institutions . . . from performing any service on behalf of the [FDIC]."  12 U.S.C. § 1822(f)(4)(A), (f)(E)(iii).   By enacting the mandatory language in section 1822(f)(4), we find that Congress created a presumption of nexus.  *See Johnson*, 86 M.S.P.R. 501, ¶¶ 2, 11, 19 (finding a presumption of nexus based on similar language in the Indian Child Protection and Family Violence Prevention Act).  This presumption is further supported by the minimum fitness regulations, which also require removal for the charged conduct.   12 C.F.R. §§ 336.3(i)(1), 336.8(a).  In promulgating the minimum fitness regulations, the FDIC explained that employing individuals who engage in a pattern or practice of defalcation by failing to pay debts owed to financial institutions "reflects adversely on the FDIC's integrity and credibility."[3]   Minimum Standards of Fitness for Employment with the FDIC, 61 Fed. Reg. 28,725, 28,727 (June 6, 1996).

¶13        Therefore, we agree with the administrative judge's finding that the appellant's removal promotes the efficiency of the service.  RID at 11-12.

The administrative judge properly denied the appellant's affirmative defenses.

¶14        On review, the appellant argues that the administrative judge erred in denying his affirmative defense of disability discrimination.  RPFR File, Tab 1 at 16-21.  He argues that his debts were the result of expenses related to his daughter's medical condition.  *Id*. at 16-19.   He also asserts that the administrative judge abused her discretion by imposing sanctions that precluded him from presenting evidence concerning his disability discrimination affirmative defense.  *Id*.  We disagree.

---

[3] The appellant argues that the Board previously has rejected a finding of nexus based on an employee's private debts.  RPFR File, Tab 1 at 15-16 (citing *Byars v. Department of the Army*, 9 M.S.P.R. 225, 228-29 (1981)).   However, *Byars* did not involve an employee with a specific obligation to the financial institutions to whom the employee was indebted.  *See Byars*, 9 M.S.P.R. at 228 (observing that an employee's personal debts are to transpire between the debtor and creditor unless the agency establishes that the employee's nonpayment of just debts has or will have a deleterious effect on that employee's performance or the agency's ability to perform its assigned mission).  For this reason, we find the present situation distinguishable from *Byars*.

¶15     In *Jonson I*, we deferred to the decision of the Equal Employment Opportunity Commission (EEOC) to permit claims of discrimination, such as this one, based on an employee's association with an individual with a disability. *Jonson I*, ¶ 18.    An appellant raising such a claim must show that the discrimination was based on his relationship or association with an individual with a known disability.    29 C.F.R. § 1630.8.

¶16     According to the appellant, he was unable to pay his debts because of his daughter's medical bills.  RPFR File, Tab 1 at 17-19.  However, the American with Disabilities Amendments Act does not require employers to provide a reasonable accommodation based on a claimant's association with a disabled individual.  *See Jonson I*, ¶ 18 (citing *Simms v. Department of the Navy*, EEOC Appeal No. 01992195, 2002 WL 1057094, at *3-*4 (May 16, 2002) (denying a complainant's claim that the agency discriminated against her when, in pertinent part, it declined to continue providing her with leave to care for her disabled daughter)).  Thus, we agree with the administrative judge that the appellant's claim that the FDIC discriminated against him when it did not excuse his debts must fail.  RID at 11.

¶17     The appellant also argues that he was subjected to disparate treatment. Specifically, he alleges he has direct evidence that he was targeted for removal because he was perceived to be using his children's medical conditions as an excuse for his debts.    RPFR File, Tab 1 at 19; RF, Tab 15 at 20, 83; *see Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶¶ 19, 22 (2013) (finding direct evidence of discriminatory motive based on a deciding official's statements in an appellant's removal decision that he considered the detrimental impact of the appellant's medical inability to fulfill the full range of his duties on the efficiency of the organization and his coworkers).  To support his claim, he relies on affidavits that the administrative judge declined to consider because they were precluded by her sanctions order.  RPFR File, Tab 1 at 19-20; RID at 10-11.

She therefore found that he failed to meet his burden to prove disparate treatment based on disability. RID at 11.

¶18 It is well settled that administrative judges have broad discretion to regulate the proceedings before them, including the authority to rule on discovery motions and to impose sanctions as necessary to serve the ends of justice. *Defense Intelligence Agency v. Department of Defense*, 122 M.S.P.R. 444, ¶ 16 (2015); 5 C.F.R. § 1201.43(a); *see Smets v. Department of the Navy*, 117 M.S.P.R. 164, ¶ 12 (2011) (declining to find that an administrative judge abused her discretion by precluding an appellant from submitting additional evidence regarding her disability discrimination claim as a sanction for failure to comply with an order to appear for a deposition), *aff'd per curiam*, 498 F. App'x 1 (Fed. Cir. 2012). Sanctions should only be imposed if: (1) a party has failed to exercise basic due diligence in complying with Board orders; or (2) a party has exhibited negligence or bad faith in his efforts to comply. *Williams v. U.S. Postal Service*, 116 M.S.P.R. 377, ¶¶ 7-8 (2011).

¶19 Here, the appellant argues on petition for review that his failure to respond to discovery and the administrative judge's discovery-related orders was due to his then-attorney's dilatory conduct. RPFR File, Tab 1 at 20. He presented evidence below of this dilatory conduct. RF, Tab 11 at 16-85, 88, 94-96. He also presented evidence that he repeatedly contacted his attorney regarding the failure to respond to the FDIC's discovery, its motion to compel, and the administrative judge's order to show cause why sanctions should not be issued. *Id.* at 16-19, 49, 51-54, 56, 59-61, 63-64, 69-72, 81, 84, 91, 95-96. In some instances, the appellant received no response, while, on a few occasions, his attorney assured him that he was "[w]orking it" and would "file a timely response." *Id.* at 16-19, 50-51, 82-83, 96. On other occasions, the appellant's attorney's responses suggested that he was not focused on the case, such as that he "[g]ot bogged down," and, "When you shoot at the king you don't want to miss. Stop squeezing." *Id.* at 16-19, 72, 82-83.

¶20    Generally, an appellant is responsible for the errors of his chosen representative. *Miller v. Department of Homeland Security*, [110 M.S.P.R. 258](), ¶ 11 (2008).  However, there is a limited exception to this rule if an appellant has proven that his diligent efforts to prosecute his case were thwarted by his attorney's deception and negligence. *Id.*; *see Herring v. Merit Systems Protection Board*, [778 F.3d 1011](), 1014-15 (Fed. Cir. 2015) (considering such factors as the appellant's medical conditions, her executing a power of attorney in favor of her legal representatives, and her active follow-up shortly before the deadline for filing her appeal which revealed that her counsel's false reassurance into believing that no additional action on her part was necessary to timely file her appeal).  Nonetheless, even if an appellant's representative misleads him as to the status of a filing, the appellant has a personal duty to monitor the progress of his appeal at all times and not leave the matter entirely to his attorney. *Miller*, [110 M.S.P.R. 258](), ¶ 12.

¶21    Here, the FDIC notified the appellant and his attorney via email on August 18 and 20, 2015, that it had not received the appellant's discovery responses.  RF, Tab 11 at 78-80.  During the next 3 1/2 months, the appellant and his attorney received the FDIC's motion to compel, the order compelling the appellant's discovery responses, the FDIC's motion for sanctions, the order to show cause why sanctions should not be imposed, and, finally, the order imposing sanctions.  RF, Tabs 4-8.  Because both the appellant and his attorney were registered e-filers, they are deemed to have received these electronically served documents on the date of electronic submission and were responsible for monitoring case activity to ensure that they received all case-related documents. RF, Tab 4 at 21, Tab 5 at 3, Tab 6 at 8, Tab 7 at 2, Tab 8 at 3; IAF, Tab 1 at 2, 10; [5 C.F.R. § 1201.14](j)(3), (m)(2).

¶22    Despite repeated notifications that his attorney was not responding to the FDIC's discovery and discovery-related motions and orders, the appellant waited until after the administrative judge imposed sanctions, 4 months after initially

learning that his attorney had not responded to the FDIC's discovery, to terminate his attorney and hire a new one. RF, Tab 11 at 19. On review, he has not claimed any special circumstances, such as a medical condition, that might excuse his failure to intervene once he learned that his attorney was not acting diligently. RPFR File, Tab 1 at 20-21. Under these circumstances, we agree with the administrative judge that the appellant did not exercise basic due diligence in relying on his attorney. Because the appellant's alleged evidence of disparate treatment was properly precluded by the administrative judge's ordered sanctions, we affirm the administrative judge's denial of the appellant's disparate-treatment disability claim.[4] RID at 10-11; RF, Tab 13 at 2, 4; *see Simon v. Department of Commerce*, 111 M.S.P.R. 381, ¶¶ 11, 14-15 (2009) (discussing appropriate sanctions for failure to comply with an order); 5 C.F.R. § 1201.43(a) (listing possible sanctions for failure to comply with an order).

¶23     In addition, the appellant reargues on review that the minimum fitness regulations are contrary to both law and public policy. RPFR File, Tab 1 at 8-13, 16-17; RF, Tab 15 at 7-11. The gravamen of the appellant's claim is that the minimum fitness regulations discriminate against individuals whose debts are related to bankruptcy. RPFR File, Tab 1 at 9-13, 16-17; *see* 11 U.S.C. § 525(a) (generally prohibiting discrimination based solely on debts that are, or could be, discharged under the Bankruptcy Act). The administrative judge implicitly found

---

[4] The appellant also argues that the administrative judge's sanctions prevented him from conducting discovery regarding the FDIC's "intentions in terminating" him. RPFR File, Tab 1 at 21. He does not allege that he timely propounded discovery. *Id.* Nor does he explain how the administrative judge's two orders concerning sanctions, both of which were issued more than 4 months after the deadline she set for initiating discovery, prevented him from obtaining this information. RF, Tabs 3, 8, 13. Because he did not file a motion to compel below, his argument that he was denied discovery provides no basis for reversal of the initial decision. *Szejner v. Office of Personnel Management*, 99 M.S.P.R. 275, ¶ 5 (2005) (finding that an appellant's failure to file a motion to compel discovery precluded him from raising an agency's failure to respond to discovery for the first time on petition for review), *aff'd*, 167 F. App'x 217 (Fed. Cir. 2006).

this argument was effectively precluded by her ordered sanctions. RID at 10; RF, Tab 15 at 7-11. We agree.

¶24    The administrative judge advised the parties that, as a sanction, she would draw an inference in favor of the FDIC regarding the information it sought in discovery, specifically including the appellant's affirmative defenses. RF, Tab 8 at 1, Tab 13 at 2. In discovery, the FDIC requested that the appellant identify the factual bases for his claims that the FDIC's actions constituted harmful error and were not in accordance with law. RF, Tab 4 at 11. The FDIC also requested that he identify the factual and legal bases for his claims of discrimination. *Id.* The appellant's response, which he did not provide, should have identified his bankruptcy discrimination defense. Therefore, because the FDIC was entitled to an inference regarding the appellant's affirmative defenses, we find that the administrative judge acted within her discretion in denying this affirmative defense. *See Simon*, 111 M.S.P.R. 381, ¶ 14 (finding that an administrative judge went too far by striking an appellant's affirmative defenses, but that she could have acted within her discretion by simply barring the appellant from presenting any evidence to support those defenses or drawing an inference in favor of the agency regarding the information sought).

¶25    Thus, we find that the administrative judge properly denied the appellant's affirmative defenses.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the EEOC. *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                              _____
                                            Jennifer Everling
                                            Acting Clerk of the Board

Washington, D.C.